IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES THOMAS FOREMAN, *et al.*,       )
                                       )
    Plaintiffs,                        )
                                       )
v.                                     )     CIVIL ACTION 07-0129-WS-C
                                       )
AMERICAN ROAD LINES, INC., *et al.*,   )
                                       )
    Defendants.                        )

## ORDER

    This action comes before the Court on plaintiff John Wayne Harris's Objection to Defendants' Retained Expert, John W. Davis (doc. 79) and Motion for *Daubert* Hearing on Defendants' Expert, John W. Davis (doc. 78), as well as on defendants' Motion to Strike Plaintiff's Response (doc. 87). The motions have been briefed and are ripe for disposition.[1]

**I.  Background.**

    This consolidated litigation arises from a collision between a railroad engine and a tractor truck at a railroad crossing near U.S. Highway 43 in Mobile County, Alabama on June 1, 2006. John Wayne Harris, one of three plaintiffs suing the trucking company (American Road Lines, Inc.) and the truck driver (Albert Lilly, Jr.), was a locomotive engineer operating the railroad engine in the ordinary course of his employment with nonparty Norfolk Southern Railroad Company at the time of the accident. Harris's Complaint (originally filed in Civil Action 07-0344-WS-C prior to consolidation in these proceedings) alleges causes of action against

---

    [1]  "It is well established that a hearing is not required every time a party invokes a *Daubert*-type objection." *United States v. Junkins*, 537 F. Supp.2d 1257, 1259 n.1 (S.D. Ala. 2008) (citations omitted); *see also City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 564 n.21 (11th Cir. 1998) (noting that *Daubert* hearings "are not required by law or by rules of procedure"). Rather, it is entirely proper to adjudicate *Daubert* issues on the briefs where "it does not appear that a hearing would materially advance the Court's understanding of these issues or that credibility-based factual determinations will be necessary to resolve the Motion." *Junkins*, 537 F. Supp.2d at 1259 n.1. That being precisely the case here, Harris's *Daubert* motion will be decided without an evidentiary hearing.

American Road Lines and Lilly for negligence and wantonness, and against American Road Lines for negligent/wanton entrustment and negligent/wanton hiring, training and supervision in connection with the accident.

Among the damages sought by Harris are claims for psychological trauma and emotional injuries arising from the collision, as well as permanent loss of earnings capacity. The pending Motions relate to those particular categories of damages and, more particularly, whether defendants may call their retained psychologist, John W. Davis, Ph.D., to testify to his expert opinions concerning the existence and severity of Harris's psychological and emotional injuries, and the extent to which such injuries restrict Harris's ability to work. Harris seeks to exclude Dr. Davis's testimony in its entirety on the basis of two distinct objections. First, Harris maintains that defendants should be barred from calling Dr. Davis because of their failure timely to produce the disclosures mandated by Rule 26(a)(2)(B)(v), Fed.R.Civ.P., relating to prior expert witness testimony. Second, Harris asserts that Dr. Davis's proffered opinions concerning the severity of Harris's post-traumatic stress disorder and the extent to which that psychological condition restricted his employment fail to comport with the reliability threshold defined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Each objection will be considered in turn.

## II.     Harris's Objection to Defendants' Disclosures Concerning Dr. Davis.

Harris's first objection to Dr. Davis's testimony is strictly procedural, and is predicated on defendants' partial noncompliance with the expert disclosure requirements of Rule 26(a)(2). The relevant procedural history is that, on May 12, 2008, Magistrate Judge Cassady extended the time for defendants to serve their expert reports, directing that "the defendants are required to serve their expert reports not later than June 6, 2008." (Doc. 54, at 1 (emphasis omitted).) On that June 6 deadline, defendants filed their Designation of Expert Witnesses and Rule 26 Information (doc. 55) listing Dr. Davis as an expert and furnishing plaintiffs with copies of his *curriculum vitae* and reports. It is undisputed that defendants' June 6 disclosures concerning Dr. Davis failed to include "a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition," as required by Rule 26(a)(2)(B)(v). Rather than notifying defense counsel of the omission and requesting supplementation, Harris's attorney pressed forward with Dr. Davis's deposition on July 31, 2008. During that deposition,

Harris's counsel asked Dr. Davis if he possessed a list of all cases in which he had testified, by deposition or in court, in the last five years.  Dr. Davis responded that he did not; however, he added, "I could probably come up with, you know, say, ten [cases], if you would like for me to do that."  (Davis Dep., at 74.)  Harris's attorney did not acknowledge Dr. Davis's offer to furnish at least a partial list of approximately 10 cases in which he had recently provided testimony, electing instead to abandon that line of questioning altogether.  (*Id.* at 75.)

Plaintiff Harris took no further action of any kind concerning the missing Rule 26(a)(2)(B)(v) disclosures for the next 60 days.  He did not follow up with defense counsel.  He did not file a motion to compel.  Finally, on September 30, 2008, with no prior notice to defendants, Harris's attorney filed the Objection (doc. 79) seeking to exclude Dr. Davis's testimony altogether based on the absence of Rule 26(a)(2)(B)(v) disclosures.

Unquestionably, it was incumbent on defendants to comply fully and timely with the disclosure requirements of Rule 26(a)(2), including specifically providing plaintiffs with a list of other cases in which Dr. Davis has testified in the last four years.  Defendants did not timely furnish that list.  However, Harris's Objection is not well taken for at least three reasons.  First, notwithstanding defendants' omission in providing the requisite list of cases, Harris must share culpability for the nondisclosure.  Indeed, upon receiving disclosures lacking the list of cases required by Rule 26(a)(2)(B)(v), Harris had a readily available remedy in the form of a request for supplementation pursuant to Rule 26(e).  Had Harris made such a request, this issue almost certainly would have been resolved in a mutually satisfactory, painless, and efficient manner.  But Harris never asked.  Instead, Harris remained silent for months, then abruptly filed his Objection in hopes of parlaying an innocuous, easily-corrected omission into disallowance of Dr. Davis's testimony in its totality.  Such gamesmanship flies in the face of the spirit of cooperation and fair play that animates Rule 26, and shifts the equities against plaintiff.  Second, defendants' good faith is manifested in both Dr. Davis's unsolicited offer to generate a list of 10 cases off the top of his head during his deposition and in defendants' prompt submission of the list to Harris's attorney within days after being alerted to the omission by the filing of the Objection.  These circumstances suggest that defendants' omission was the product of inadvertent oversight, not intentional suppression.

Third, Harris's contention that he was prejudiced by the nondisclosure is simply not

credible. According to Harris, the result of defendants' omission is that "counsel for Plaintiff had no opportunity to examine Dr. Davis on prior testimony as a retained expert during the deposition, to the prejudice of this Plaintiff." (Doc. 86, at 3.) Again, any prejudice could have been eliminated had plaintiffs' counsel simply requested Rule 26(e) supplementation at any time prior to Dr. Davis's deposition. Moreover, plaintiff failed to mitigate any prejudice by waving off Dr. Davis's offer to generate a partial list from memory during the deposition itself. Had Harris's counsel assented, Dr. Davis would have generated that list, and counsel could have examined him to his heart's content about those other cases during the July 31 deposition. Inexplicably, Harris's counsel declined to proceed in this manner, which would have greatly ameliorated any harm wrought by the nondisclosure. Besides, defendants state (with no dissent from Harris) that Harris's counsel had previously had a case in which Dr. Davis furnished expert testimony. Surely, that experience could have formed the cornerstone of effective deposition examination of Dr. Davis concerning his expert witness history. Again, Harris's counsel chose not to follow such a path. Finally, it is uncontroverted that the list was furnished to Harris's counsel on October 10, 2008, some four months before the anticipated trial date in this action. (Doc. 82, at Exhs. B, C.) Harris's counsel has ample time to review that list, investigate the cases recited therein, and prepare an effective trial cross-examination of Dr. Davis about his litigation history. In sum, then, any prejudice to Harris occasioned by the delayed compliance with Rule 26(a)(2)(B)(v) is in large part self-inflicted, the result of his own failure to take appropriate remedial steps prior to and during Dr. Davis's deposition to obtain the missing information. Any residual prejudice that may be ascribed to defendants is rendered negligible by Harris's counsel's previous litigation experience with Dr. Davis and defendants' disclosure of the relevant information some four months prior to trial, immediately upon being apprised of the omission.

For all of these reasons, plaintiff Harris's Objection to Defendants' Retained Expert, John W. Davis (doc. 79) is **overruled**. Defendants will not be barred from calling Dr. Davis to testify at trial for failure timely to disclose information required by Rule 26(a)(2)(B)(v).[2]

---

[2] In light of this determination, defendants' Motion to Strike Plaintiff's Response (doc. 86) as untimely is **moot**. Even if plaintiff's untimely Reply (doc. 86) is considered,

### III.     Harris's *Daubert* Objection.

Harris's other objection to Dr. Davis centers on *Daubert* principles.  As plaintiff puts it, he is interposing a "*Daubert* challenge to the opinion which the Defendants will attempt to illicit [*sic*] from Dr. Davis: that the Plaintiff's post-traumatic stress disorder is mild and does not restrict him for employment activity."  (Plaintiff's Brief (doc. 85), at 1.)  According to Harris, "[t]he proper application of the *Daubert* rule to the testimony of Dr. Davis in this case requires that his statements to the affect [*sic*] that Mr. Harris only has 'mild' post-traumatic stress disorder, or that the conditions found do not interfere with his ability to function should be excluded from evidence."  (*Id.* at 13.)

#### A.     *Dr. Davis's Qualifications, Methodology and Opinions.*

The record reflects that Dr. Davis is a licensed clinical psychologist with more than 35 years of experience in private practice and numerous national, regional and local professional affiliations.  (Doc. 83, at Exh. E.)  Dr. Davis conducted an in-person evaluation of Harris on April 22, 2008.  At that time, Dr. Davis took a history from Harris, administered (with assistance from his staff) at least a half dozen psychological tests for evaluation purposes, reviewed medical and psychological records (including those from Harris's psychologist, Dr. Daniel Koch) as well as vocational and employment-related documentation, and performed a clinical interview.  (Doc. 83, at Exh. A.)  Several weeks later, Dr. Davis completed a six-page narrative report (*id.*) summarizing the information he reviewed, documenting his clinical observations, and setting forth his opinions and recommendations.  Dr. Davis's diagnostic impression was "Post Traumatic Stress Disorder, Mild" and he opined that "[f]rom a psychological point of view there are no limitations or restrictions seen in Mr. Harris' profile.  In fact, he would benefit from returning to work where he could again feel like a constructive and productive individual."  (*Id.*)  In stating these conclusions, Dr. Davis explains that they are based on the materials provided to him, as well as "[his] own testing and observations, training and clinical experience, and also the

---

plaintiff remains on the losing side of the underlying Objection.  Inasmuch as plaintiff's Reply is not outcome-determinative, striking it as untimely would have no practical effect on the underlying ruling.  That said, the parties are reminded that Court-imposed filing deadlines are not aspirational, and that untimely responses are subject to being stricken in the absence of a showing of good cause or excusable neglect, pursuant to Rule 6(b), Fed.R.Civ.P.

history provided by Mr. Harris."  (Doc. 83, at Exh. B.)

### B.     Daubert *Standard.*

The Federal Rules of Evidence, as construed by the Supreme Court in the landmark *Daubert* decision, "require[] expert scientific evidence to be both reliable and relevant pursuant to Rule 702," such that it "appropriately assists the trier of fact."  *United States v. Henderson*, 409 F.3d 1293, 1302 (11th Cir. 2005).[3]  In that regard, "[t]he court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand."  *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007).  The Court's gatekeeping function is guided by the well-established principle that "[t]he proponent of the expert testimony carries a substantial burden under Rule 702" to lay the proper foundation to show admissibility of that testimony by a preponderance of the evidence.  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005); *see also Phillips v. American Honda Motor Co.*, 2007 WL 1892179, *2 (11th Cir. July 3, 2007) ("The proponent of expert testimony bears the burden of showing that the expert's methodology is reliable.").

As a general proposition, "[i]n determining the admissibility of expert testimony under Rule 702, a district court considers whether (1) the expert is qualified to testify competently regarding the matter he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."  *United States v. Douglas*, 489 F.3d 1117, 1124-25 (11th Cir. 2007); *see also Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (similar).  That said, "[t]he rules relating to *Daubert* issues are not precisely calibrated and must be applied in case-specific evidentiary circumstances that often defy

---

[3] Rule 702, Fed.R.Evid., reads as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *Id.*

generalization." *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). For that reason, courts have stressed that the *Daubert* inquiry is "a flexible one," that the *Daubert* factors are mere guidelines for applying Rule 702, and that "expert testimony that does not meet all or most of the *Daubert* factors may sometimes be admissible" based on the particular circumstances of the particular case. *Id.* at 1267-68.[4] In performing a *Daubert* analysis, the Court's focus must be "solely on principles and methodology, not on the conclusions that they generate"; thus, it matters not whether the proposed expert testimony is scientifically correct, so long as it is shown to be reliable. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

### C.   *Application of* **Daubert** *Principles to Dr. Davis's Opinions.*

The crux of Harris's *Daubert* objection is that, in Harris's view, Dr. Davis's opinions conflict with objective psychological tests that were administered. This objection is thus predicated solely on the reliability prong of the *Daubert* analysis, as Harris in no way contests Dr. Davis's qualifications to offer expert opinions in the field of clinical psychology.[5]

Among the psychological test instruments used by Dr. Davis in his evaluation of Harris were the Millon Clinical Multiaxial Inventory III ("MCMI") and the Minnesota Multiphasic Personal Inventory 2 ("MMPI"). (Davis Dep., at 19-20.) As Dr. Davis testified, those tests "are objective. It takes my subjective judgment out of it. A computer scores them and generates a report." (*Id.* at 20.) Computer-generated language in the MCMI report for Harris includes statements that "intense anxiety, plus some post-traumatic stress features might sometime [*sic*] create some lapses in his attention and concentration. ... Major depressive features, though limited in number or intensity, raise the possibility of a cognitive component to his depressive

---

[4] In applying these principles to the case at bar, the Court proceeds in recognition of appellate guidance that "a district court may not exclude an expert because it believes one expert is more persuasive than another expert." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005); *see also Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) ("It is not the trial court's role to decide whether an expert's opinion is correct."). Thus, the Court's views on the relative persuasiveness of Dr. Davis's and Dr. Koch's dueling opinions do not constitute a permissible basis for excluding either under Rule 702 and *Daubert*.

[5] "[T]he holding of *Daubert* is as readily applicable in cases involving psychologists as in those in which the proffered expert testimony is of a more scientific nature." *United States v. Guild*, 2008 WL 153764, *2 n.1 (E.D. Va. Jan. 14, 2008).

state.  This may involve indecisiveness, pessimism, or reduced capacity to think clearly and concentrate." (*Id.* at 27.)  The MCMI profile report also recites scaled values on various characteristics for Harris, including a score of 90 out of 100 (as compared to "normal" reading of 30 or below) on the anxiety scale and a score of 78 out of 100 on the depression scale.  (*Id.* at 36-38.)  Similarly, the MMPI computer-generated report for Harris indicates that "Depressive related symptoms, as previously noted, form a defining feature of this profile.  Their extensiveness also suggests that this is a severe, persistent, and overwhelming condition. ... There are clinically significant signs of anxiety." (*Id.* at 39-40.)  On the MMPI's scales, Harris scored an 89 for depression, an 87 on psychosthenia (a measurement of obsessive-compulsive traits and an indicator of anxiety), a 75 on the avoidant scale (showing him to be highly introverted), and a low 35 on the mania scale (reflecting a lack of energy in his personality).  (*Id.* at 45-47.)

Based on these objective metrics of the MCMI and MMPI reports, Harris contends that Dr. Davis's opinions that Harris suffers from mild post-traumatic stress disorder and has no psychological limitations to employment are so unreliable as to warrant exclusion by this Court in its *Daubert* gatekeeper role.  As Harris argues, "Dr. Davis' opinion simply is not supported by any of his objective testing and therefore should be excluded from evidence." (Plaintiff's Brief, at 10.)[6]  The Court disagrees.

The fundamental defect with Harris's *Daubert* argument is that it is premised on the frankly peculiar notion that clinical psychologists must give controlling, decisive weight to objective test instruments in forming clinical diagnoses and recommendations, and that the failure to do so strips a psychologist's opinions of reliability to the point that his testimony flunks a *Daubert* analysis.  This contention is devoid of evidentiary or legal support.  Certainly, Harris offers no evidence that, as a matter of scientifically accepted practice, clinical psychologists confine their diagnoses and treatment recommendations to those dictated by computer-generated tests, to the exclusion of subjective tests, clinical observations, and

---

[6]     Dr. Davis clearly opined that Harris is "both anxious and depressed." (Davis Dep., at 37.)  Harris does not quarrel with that finding, but merely takes issue with Dr. Davis's assessment of the <u>severity</u> of those conditions.

professional judgment. Indeed, Harris's argument would reduce the discipline of clinical psychology to nothing more than rote recitation of standardized computer-generated profiles based on the subject's responses to stylized true-false questions. In this view of clinical psychology, patient interviews would be irrelevant and unnecessary. Subjective testing would likewise be superfluous. Exercise of clinical judgment would be impermissible. The *reductio ad absurdum* of Harris's position is that there is no need for clinical psychologists at all, inasmuch as the MCMI and MMPI require little training to administer and Harris maintains that any exercise of professional judgment or clinical observations in interpreting those test results is scientifically unreliable to the point of violating baseline admissibility standards under the Federal Rules of Evidence. This Court is unwilling to sound the death knell for an entire field of expertise in the manner proposed by Harris.[7]

      Dr. Davis explained that, in reaching his diagnostic impressions and recommendations, he did not rely solely on objective, computer-scored tests. To the contrary, he explained, "I look at three things. I look at what he tells me. I look at the testing. And I use my own judgment." (Davis Dep., at 26.) Elsewhere, Dr. Davis reiterated the testimony that "my opinions are based on not just the reports, but the interviews, and my clinical judgment." (*Id.* at 30.) This is not to say that the objective tests are not consulted at all, but it is to say that such objective reports "are a guideline and not written in stone." (*Id.* at 42.) According to Dr. Davis, "they are helpful, but I don't think they are definitive." (*Id.* at 48.) Tellingly, the test instruments themselves are consistent with Dr. Davis's view that they are data points in a collage, rather than being conclusive in isolation. For example, the capsule summary for the MCMI report for Harris begins with a disclaimer, stating in part the following: "The MCMI-III report cannot be considered definitive. It should be evaluated in conjunction with additional clinical data. The report should be evaluated by a mental health clinician trained in the use of psychological tests." (Doc. 83, at Exh. C.) Dr. Davis has explained, with no contradictory showing from Harris, that "each report generated by the computer analysis of these tests ... should not be substituted for the

---

      [7] To reduce the discipline of clinical psychology to parroting computer-generated statements in the MCMI and MMPI would be, among other things, to marginalize the 148,000 members of the American Psychological Association whose approach to their craft is otherwise. *See generally* http://www.apa.org/about.

clinician's judgment and that other factors in the history, treatment, etc., need to be considered as well." (Doc. 83, at Exh. B.)  Dr. Davis has also testified, again without rebuttal, that these objective test reports "represent primarily hypotheses or possibilities requiring verification through other aspects of a psychological evaluation" and "may exaggerate or distort psychopathology" in certain cases.  (Davis Dep., at 29-30.)[8]

Simply put, Harris has made no showing, and there is no reason to believe, that Dr. Davis's reliance on a combination of clinical observations, test results, and professional judgment in forming opinions concerning diagnostic impressions and recommendations concerning employment restrictions is scientifically suspect to the point of warranting *Daubert* intervention.  There is no evidence, and no reason to believe, that Dr. Davis's methodology in evaluating Harris was unreliable, or that it differed materially from methodology applied by clinicians in the psychological field every single day.  Nor is it constructive or accurate for Harris to denigrate Dr. Davis's opinions as mere "guesses" that are "conclusory and speculative" or mere "*ipse dixit* of the expert" because they deviate from objective testing data.  (Plaintiff's Brief (doc. 85), at 11-13.)  Contrary to Harris's characterizations, Dr. Davis's opinions and the reasoning underlying them are explained in detail in his report and deposition.  This is not a case where the expert is merely opining in conclusory terms "the diagnosis is X because I say it is X"; therefore, the authorities on which Harris relies are readily distinguishable.  If Harris were correct in classifying Dr. Davis's opinions as speculative guesses because they are not in lockstep with objective test results, but instead proceed from his professional judgment based on other data sources and impressions, then precious few expert witnesses in the social sciences would ever be allowed to testify in federal court.  That there is an element of clinical judgment in Dr. Davis's opinions does not render them unreliable or inadmissible.  *See generally In re*

---

[8] Indeed, several aspects of the test reports for Harris underscore the proposition that such instruments are neither inviolate nor foolproof.  For example, the MCMI found a relatively high score for Harris on the schizoid scale, but Dr. Davis saw no evidence at all of schizophrenic tendencies in Harris.  (Davis Dep., at 35.)  Similarly, the MCMI listed "Histrionic Personality Disorder" as a possible diagnosis for Harris, even though Dr. Davis saw no signs of dramatic, histrionic, or "drama-queen" type behavior in him.  (*Id.* at 42.)  Neither Harris nor his psychologist, Dr. Koch, have suggested that he suffers from schizoid or histrionic disorders, or that those aspects of the objective test results must be accepted at face value.

*Viagra Products Liability Litigation*, 572 F. Supp.2d 1071, 1077 (D. Minn. 2008) ("Expert testimony may be based either on professional studies or personal experience ....").[9]

To the extent that Dr. Davis's opinions diverge from objective tests administered to Harris, such differences may be fodder for robust cross-examination, but do not warrant outright exclusion of his testimony.  In fact, "[t]he identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003).  The Eleventh Circuit has properly observed that "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence" and that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 1341 (citations omitted); *see also Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (noting that "as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left to the jury's consideration."); *In re Viagra*, 572 F. Supp.2d at 1078 (recognizing that medical experts commonly disagree on issues of diagnosis, but that questions of conflicting evidence must be left for jury's determination).

In light of the foregoing, it is the opinion of this Court, after careful review of the parties' written arguments and supporting exhibits, that, notwithstanding whatever flaws they may have, Dr. Davis's diagnostic impressions and opinions concerning employment limitations for Harris will assist the trier of fact to determine a fact in issue, inasmuch as they are (1) presented by a qualified expert, (2) based upon sufficient facts or data, (3) the product of reliable principles and

---

[9] For example, in *Mancuso v. Consolidated Edison Co. of New York, Inc.*, 967 F. Supp. 1437 (S.D.N.Y. 1997), the defendant issued a *Daubert* challenge to the testimony of the plaintiff's clinical psychologist that the plaintiff suffered from a learning disability.  The *Mancuso* defendant, much like Harris here, insisted that the psychologist's testimony was unreliable because the expert relied on clinical opinions rather than the DSM-IV.  The *Mancuso* court refused to exclude the psychologist's testimony under *Daubert*, reasoning that the psychologist was well qualified, had administered tests to the plaintiff, had observed the plaintiff's behavior, and should therefore be allowed to offer opinions predicated on her clinical psychoeducational judgment, with the defendant's counterarguments going to the testimony's weight, not its admissibility.  *Mancuso*, 967 F. Supp. at 1456.  That approach is persuasive.

methods, and (4) the result of reliable application of such principles and methods to the facts of the case. Accordingly, plaintiff's motion (doc. 78) to exclude Dr. Davis's opinions that Harris's post-traumatic stress disorder is mild and does not restrict him from employment activity is **denied**.[10]

IV. **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiff John Wayne Harris's Objection to Defendants' Retained Expert, John W. Davis (doc. 79) is **overruled**;

2. Plaintiff Harris's Motion for *Daubert* Hearing on Defendants' Expert, John W. Davis (doc. 78) is **denied**; and

3. Defendants' Motion to Strike Plaintiff's Response (doc. 87) is **moot**.

This actions remains set for a Final Pretrial Conference before the undersigned on **January 13, 2009** at **2:30 p.m.**, with jury selection to follow on **February 3, 2009**.

DONE and ORDERED this 16th day of December, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[10] In his Motion, Harris alludes to (but does not develop) an argument that Dr. Davis should not be permitted to offer opinions regarding the transferability of Harris's skill set because he is not a vocational expert. This issue has not been adequately fleshed out, and will be reserved for trial to the extent that defendants seek to elicit testimony from Dr. Davis that Harris's skills are readily transferable to other fields in the event he no longer desires to be a railroad engineer. At best, any opinions from Dr. Davis regarding Harris's vocational skill set inventory or the transferability of same appear highly questionable given that Dr. Davis's expertise lies in the field of clinical psychology, not vocational rehabilitation.